George Arnold BROWN, Bunk Doyle Clifton and Raymond Lloyd Pell, Appellants,

v.

UNITED STATES of America, Appellee.

No. 19965.

United States Court of Appeals Fifth Circuit.

May 22, 1963.

Rehearing Denied July 22, 1963.

Louis Ossinsky, Sr., James H. Tucker, Ossinsky & Krol, Daytona Beach, Fla., for appellants.

Edward F. Boardman, U. S. Atty., William Hamilton, Jr. and James H. Walsh, Asst. U. S. Attys., Jacksonville, Fla., for appellee.

Before RIVES and GEWIN, Circuit Judges, and SHEEHY, District Judge.

SHEEHY, District Judge.

The appellants were jointly charged by indictment consisting of five counts with certain violations of the Internal Revenue laws of the United States. Count One charged them with unlawful possession of a distilling apparatus in violation of Section 5601(a) (1), Title 26 U.S.C.A.; Count Two charged them with carrying on the business of a distiller without having given bond in violation of Section 5601(a) (4), Title 26 U.S.C.A.; Count Three charged them with making and fermenting mash fit for distillation of alcohol spirits on premises other than a duly authorized distillery in violation of Section 5601(a) (7), Title 26 U.S.C.A.; Count Four charged them with unlawful possession of 75 gallons of whiskey in containers not having affixed thereto stamps evidencing the determination of the tax and indicating payment of the tax required by law in violation of Section 5604(a) (1), Title 26 U.S.C.A.; and Count Five charged them with wilfully attempting to evade taxes due the United States on distilled spirits in violation of Section 7201, Title 26 U.S.C.A.

Count Five was dismissed, and each of the appellants plead not guilty to the first four counts. A jury trial was had which resulted in a verdict of guilty as to each of the appellants on each of the four counts. Brown was sentenced to one year on Count One with the execution of the sentence being suspended for five years, and he was placed on active probation for that period. As to Brown, imposition of sentence on the remaining counts was suspended, and he was placed on supervised probation for five years. Clifton was sentenced to one year on Count One, and imposition of sentence on the remaining counts was suspended with him being placed on supervised probation for five years. Pell was sentenced to eighteen months on Count One, and imposition of sentence on the remaining counts was suspended with him being placed on supervised probation for five years.

Appealing from the judgment of conviction and the sentences imposed, the appellants' sole contention is that the evidence was insufficient to make a prima facie case as to them, and each of them, and therefore the trial court erred in denying the motion for judgment of acquittal made on behalf of each of the appellants at the conclusion of the Government's case, the appellants having offered no evidence.[1]

The Government relied on the testimony of four law enforcement officers, namely, Robert M. Scott, an agent for the Alcohol and Tobacco Tax Branch of the Internal Revenue Service; Ernie W. Hellstrom and Guy E. Chase, agents of the Florida State Beverage Department; and Hardy R. Daugharty, a deputy sheriff of Volusia County, Florida.

The testimony of the officers establishes that the illicit still in question was first discovered on April 30, 1960, in a wooded swampy area about 1.3 miles north of State Road 40–A and approximately 9 miles west of the town of New Smyrna Beach, Volusia County, Florida; that the residence of the appellant Pell was about 300 or 400 feet north of State Road 40–A; that a woods road leads from the rear of Pell's residence to a locked gate, and then to a second locked gate, and continues a distance and then makes a circle; that a path, hereinafter referred to as the still path, leads from the woods road to the still site located approximately 175 feet from the woods road; and that boards had been laid along the still path where same crossed a swamp between the woods road and the still site.

When the still site was first located, there was found at such site the requisite equipment to make whiskey, including a still pot having a capacity in excess of 400 gallons, 7 large fermenter vats, a condenser, gasoline motor pumps to pump water used in the distilling operation and to pump mash from the fermenter vats to the still pot, a kerosene pump burner arrangement for the furnishing of the fire under the still pot and other miscellaneous equipment such as shovels, fuel cans, etc. The distilling apparatus and related equipment was so arranged and set up that it was capable of being used for the making of whiskey. However, when said still site was first observed, there was no mash set in any of the fermenter vats. The still site was next visited on May 6, 1960. At that time two new grain beds of corn had been set up in two of the fermenter vats for the purpose of making mash. Seven days later on May 13 the officers again visited the still and found mash in four of the fermenter vats, which mash was at such a stage of fermentation that it would be ready to use in the making of whiskey the following day.

On the early morning of May 14, 1960, the officers again went to the vicinity of the still site and assumed positions near the still site for observation. About 6:15 a.m. a black Chevrolet pickup truck was seen coming down the woods road from the direction of Pell's house. The pickup truck stopped at the point where the still path led off from the woods road. There were three white men in the truck (each of the appellants is a white man). Two of the occupants of the truck were recognized as being Clifton and Pell. The three men got out of the truck and went down the still path in the direction of the still site. A few minutes later the three men returned to the truck and unloaded some cardboard boxes and five gallon fuel cans from the truck. They were seen putting a hose in a 55 gallon drum that was in the truck and apparently siphoning liquid from the drum

1. Although the attorney for appellants, during the presentation of oral argument in this case to this Court, stated that he was insisting on the appeal only as to Brown because Clifton had already served the prison sentence imposed on him and Pell had or would soon finish serving the prison sentence imposed on him, the appeal as to Clifton and Pell has not been dismissed. Therefore we have considered the sufficiency of the evidence to make a case against Clifton and Pell as well as against Brown.

into the five gallon fuel cans. The three men then carried the cardboard boxes, which later were found to contain sugar, and fuel cans down the still path in the direction of the still. Thereafter a gasoline motor was heard operating at the still site. The three men did not return to the truck and the view of the officers until about 7:25 a.m. Upon returning to the truck, the men got in the truck and left the area, completing the circle and going back on the woods road toward Pell's house.

On the early morning of May 15, 1960, the officer witnesses again went to the still site. As they passed Pell's house about 5:30 a. m., they observed parked beside his house the black Chevrolet truck they had seen near the still site the day before being driven by Pell and a 1959 Willys jeep station wagon. When the officers arrived at the immediate vicinity of the still site, two of the officers went to the still site and found that the still pot was still warm, indicating that it had been operated very recently, they also found that two of the fermenter vats which had contained mash the day before were empty and that a large quantity of sugar had been brought into the site. The two officers then left the still site, and all of the officers assumed hidden positions in the area of the still site. About 6:30 a. m. the jeep station wagon previously observed parked at Pell's house drove down the woods road from the direction of Pell's house and stopped at the entrance of the still path. The three white men who were in the jeep got out. Two of them were recognized as being Pell and Clifton. The third man was not recognized, but it was observed that he had an arm in a cast. When the men got out of the jeep, they took two galvanized buckets from the jeep and carried them down the still path in the direction of the still site. Shortly thereafter noises of paper being torn and sounds of metal striking against metal were heard coming from the still site. A pump at the still site was also heard running. About 7:25 a. m. voices and persons crossing the wooden planks laid across the swamp area on the still path were heard. A man, later identified as Brown, and Pell were seen coming out of the still path onto the woods road. They had empty jugs with them, and Brown had a cast on his arm. They stopped at the point where the still path intersected the woods road. Pell was then heard to say, "After the run last night we got 15 jugs of whiskey at the house." Some of the officers, who were located only a few feet from where Pell and Brown were then standing, stood up and stated to Brown and Pell that they were State and Federal officers and that Pell and Brown were under arrest. Pell and Brown immediately broke and ran. Officer Hellstrom pursued Brown and caught him after Brown had run only a short distance. Upon being caught, Brown gave quite a fight. After getting one arm around Hellstrom's neck, Brown began to hit Hellstrom on the head with the cast he had on the other arm. It was only after officer Scott, who had undertaken to chase Pell, gave up his pursuit of Pell and came to the aid of Hellstrom that Hellstrom and Scott were able to subdue Brown and place handcuffs on him. After Brown had been subdued, he stated that that was the first time he was at the still and that he came there with Pell from Pell's house with another man he didn't know. As Pell and Brown broke to run, Clifton was observed on the still path a short distance behind Brown and Pell. Clifton, too, broke and ran and, although an officer fired a shot or two over his head trying to stop him, Clifton was not apprehended until later in the day when he turned himself in to the sheriff at the sheriff's office.

Following the arrest of Brown, one or more of the officers went to Pell's house and searched the area in the vicinity of the house. About 150 yards north of Pell's house and east of the woods road 15 five-gallon jugs of whiskey were found cached in the palmettos. These jugs did not have affixed to them stamps evidencing the payment of the tax on the whiskey. There was also found near the northeast corner of Pell's

house 480 pounds of sugar. Shortly after the whiskey was found, Pell came out of the woods near his house. He was wet and did not have on shoes. He asked the officer or officers there present who had turned him in and how long the officers had been watching him.

Following the finding of the whiskey at Pell's house, the officers, who had checked the still site earlier in the morning, returned to the still site. They found that all of the sugar that had been there earlier that morning was not there and that sugar, water and grain had been mixed in two of the fermenter vats since the earlier visit of that day. At that time they found at the still site contained in the fermenter vats approximately 2,043 gallons of mash fit for the production of distilled spirits.

There was evidence to the effect that there was no sign maintained at or in the vicinity of the still site showing the name of the person or persons operating such still, and that such person or persons was engaged in the distilling business as required by Section 5180 of Title 26 U.S.C.A. There also was evidence offered to the effect that there was only one distillery in the State of Florida and that the distillery in question in this case was not that registered distillery.

■ Our determination of the sufficiency of the evidence to make a case for the jury and to support the conviction of the appellants on each of the first three counts must be made in light of the provisions of subsection (b) of Section 5601, Title 26 U.S.C.A., which provisions became effective September 2, 1958.[2]

The evidence, as hereinabove set forth, is sufficient to establish and thereby support jury findings: 1) that on May 15, 1960, and for several days prior thereto, there was at the still site in question a distilling apparatus set up in such a manner so as to be capable of making whiskey which had not been registered as required by law; 2) that on May 15, 1960, and for several days prior thereto, the business of distilling whiskey was carried on at said still site; 3) that the person, or persons, carrying on the business of distilling whiskey at said still site had not given bond as required by Section 5173(b) of Title 26, U.S.C.A.; 4) that on May 15, 1960, there was at said still site a substantial amount of mash fit for distillation of alcohol spirits that had been made and fermented at said still site; and 5) *that on May 14, 1960, Pell and Clifton were present at said still site for approximately one hour, and that on May 15, 1960, Pell, Clifton and Brown were present at said still site for approximately one hour.*

2. Subsection (b) of Section 5601 of Title 26, U.S.C.A., provides in part:

"Presumptions.—

"(1) Unregistered stills.—Whenever on trial for violation of subsection (a) (1) the defendant is shown to have been at the site or place where, and at the time when, a still or distilling apparatus was set up without having been registered, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury.)

"(2) Failure or refusal of distiller or rectifier to give bond.—Whenever on trial for violation of subsection (a) (4) the defendant is shown to have been at the site or place where, and at the time when, the business of a distiller or rectifier was so engaged in or carried on, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury).

"(3) Unlawful production, removal, or use of material fit for production of distilled spirits.—Whenever on trial for violation of subsection (a) (7) the defendant is shown to have been at the place in the building or on the premises where such mash, wort, or wash fit for distillation or the production of distilled spirits, was made or fermented, and at the time such mash, wort, or wash was there possessed, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury)."

While there was substantial evidence of probative force, in addition to his presence at the still site on two occasions, connecting Pell with the distillery in question and some evidence, not quite as strong as that against Pell, connecting Clifton with the distillery, in addition to his presence at the still site on two occasions, the only evidence connecting Brown with the distillery that could be said to have any probative force is Brown's admitted presence at the still site on May 15, 1960. The appellants contend that mere presence at a still site cannot support a conviction for violation of the liquor laws relative to the still. This contention finds much support in the decisions, including decisions of this Court in such cases as Fowler v. United States, 5 Cir., 234 F.2d 697, and Vick v. United States, 5 Cir., 216 F.2d 228. However, all of those cases so holding were decided prior to the effective date of subsection (b) of Section 5601, Title 26, U.S.C.A.

As to each of the offenses charged in the first three counts in the instant case, said subsection (b) of Section 5601 provides that the presence of a person at the still site "shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury * * *." Thus since the effective date of said subsection (b) of Section 5601, mere presence of a defendant at a still site, such as was the one in question in the instant case, is sufficient to support a conviction for the offenses such as those charged in the first three counts of the indictment in the instant case, notwithstanding prior decisions to the contrary, unless the defendant explains his presence at the still site to the satisfaction of the jury.[3] Neither Pell nor Clifton offered an explanation of his presence at the still site. Neither did Brown offer an explanation of his presence at the still site although he did state, immediately subsequent to his arrest, that that was the first time he had been at the still site.

In our view, the evidence, when considered in light of the inference of guilt arising because of appellants' presence at the still site, was sufficient to make a case against the appellants, and each of them, as to each of the first three counts of the indictment, and, therefore, the district court properly denied appellants' motion for judgment of acquittal as to the first three counts.

■ The sufficiency of the evidence as to the guilt of the appellants of the offense charged in Count Four must be determined without the aid of a statutory inference of guilt such as is available in determining the sufficiency of the evidence as to guilt of the offenses charged in the first three counts. Unquestionably, the evidence is sufficient to raise a question of fact for the jury as to the guilt of Pell of the offense charged in Count Four. This, the appellants virtually conceded in their brief. But as to the sufficiency of the evidence to establish the guilt of Clifton and Brown of the offense charged in Count Four the question is more difficult. However, after a careful review of the evidence, we conclude that the evidence is insufficient to warrant a reasonable-minded jury finding beyond a reasonable doubt that Clifton and Brown, or either of them, possessed the 75 gallons of whiskey described in Count Four, and, therefore, the district court erred in overruling the motion of judgment of acquittal on behalf of Brown and Clifton, and each of them, as to Count Four.

The judgment of conviction as to Pell is in all things affirmed. The judgment of conviction as to Clifton and Brown, insofar as it is based on the jury verdict on Counts One, Two and Three, is affirmed, but said judgment of conviction as to Clifton and Brown, insofar as it is based on the jury verdict on Count Four, is reversed and remanded to the district court for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed and remanded in part.

---

3. Robbins v. United States, 10 Cir., 290 F.2d 281.